Case 4:18-cv-02869   Document 164   Filed on 09/22/20 in TXSD   Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
September 22, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN HANCOCK LIFE INSURANCE CO., | § § § | |
| Plaintiff, | § | |
| VS. | § § | CIVIL ACTION NO. 4:18-cv-2869 |
| THE ESTATE OF JENNIFER LAUREN WHEATLEY, et al, | § § § | |
| Defendants. | | |

## MEMORANDUM AND ORDER

Before the Court is Defendant Estate's ("the Estate") Motion to Reconsider (Doc. 147), Plaintiff's Motion for Attorneys' Fees (Doc. 77), the Estate's Motion for Attorneys' Fees (Doc. 146), and Defendant Ward's Motion for Leave to File Opposition to John Hancock's Motion for Attorneys' Fees (Doc. 94). The procedural history in this case is extensive, and the Court has explained it at length elsewhere. As relevant here, on May 28, 2020, this Court granted the Estate summary judgment as to their breach of contract claim against John Hancock, which allowed the Estate to recoup the payments improperly disbursed to Ward in the amount of $16,069.94 plus interest. The Court also dismissed the Estate's remaining claims, which included its fourth counterclaim under Texas Insurance Code Sections 542.058 and 542.060. The Estate now moves this Court to reconsider the dismissal of its fourth counterclaim. Because the final adjudication of Defendant's Motion for Attorneys' Fees depends in part on the Motion to Reconsider, it was necessary for this Court to consider these motions in tandem. On July 16, 2020, the Court heard

1

argument as to the matters and allowed the parties to submit supplemental briefing. The parties subsequently submitted such briefing and the matters are now ripe for the Court's review.

After considering the parties' filings, all responses and replies thereto, oral arguments, and the applicable law, the Court finds and holds that the Estate's Motion to Reconsider is hereby **GRANTED**. The Court further finds that the Estate's Motion for Attorneys' Fee is **GRANTED IN PART AND DENIED IN PART**, and Plaintiff's Motion for Attorneys' Fees is **GRANTED IN PART AND DENIED IN PART**. The Court also finds and holds that Defendant Ward's Motion for Leave to File Opposition to John Hancock's Motion for Attorneys' Fees is **DENIED**.

## I.     MOTION TO RECONSIDER

### A.  Legal Standard

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004). Courts, however, retain the power to revise interlocutory orders before entering judgment adjudicating the parties' claims, rights, and liabilities under Rule 54(b), and a motion urging the court to change an order or judgment is generally considered a motion to alter or amend under Rule 59(e). *See, e.g.*, *Hazim v. Schiel & Denver Publishing Ltd.*, H-12-1286, 2015 WL 5227955, at *2 (S.D. Tex. Sept. 8, 2015). A motion for reconsideration under Rule 59(e) "calls into question the correctness of a judgment." *Templet v. Hydro Chem., Inc.*, 367 F.3d 472, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). Such motions serve the narrow purpose of allowing "a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)).

2

Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly. *Id.*

### B. Analysis

The Estate does not provide new evidence to support its motion for reconsideration, and instead seeks correction of a manifest error of law as to its fourth counterclaim.

Chapter 542 of the Texas Insurance Code is designed to promote the "prompt payment of insurance claims." Tex. Ins. Code § 542.054. To do so, the Chapter provides for a series of deadlines to which insurers must adhere at each stage of the claims-handling process—violation of any of these deadlines triggers the penalty provision under § 542.060. *Cox Operating, L.L.C. v. St. Paul Surplus Lines Ins. Co.*, 795 F.3d 496, 505 (5th Cir. 2015). The relevant deadlines are as follows. Within 15 days after receiving notice of a claim, the insurer must acknowledge receipt of the claim, commence any investigation of the claim, and request from the claimant all items that the insurer reasonably believes will be required from the claimant. Tex. Ins. Code § 542.055. Within 15 days of receiving all relevant information, the insurer must notify the claimant in writing of the acceptance or rejection of the claim. *Id.* at § 542.056(a). If the claim is accepted, the insurer must pay the claim within 5 days of its notice to the claimant or, as an outer limit, 60 days. *Id.* at §§ 542.057(a); 542.058(a). Moreover, if an insurer receives notice of an "adverse, bona fide claim," the insurer must pay the claim or "properly file an interpleader action and tender the benefits into the registry of the court" within 90 days of receiving "all items, statements, and forms reasonably requested and required under Section 542.055." *Id.* at § 542.058(c).

The Fifth Circuit has held that failure to abide by any of the above deadlines triggers the penalty provision set forth in § 542.060. *Cox Operating, L.L.C.*, 795 F.3d at 505. Under this

3

provision, the insurer is liable to pay, "in addition to the amount of the claim, interest on the amount of the claim at the rate of 18% a year as damages, together with reasonable attorney's fees." Tex. Ins. Code § 542.060. The statutory interest penalty begins the day after the deadline but only accrues until the day before the policy proceeds have been deposited into the court's registry. *Prudential Ins. Co. v. Durante*, 443 S.W.3d 499, 512 (Tex. App. 2014) (citing *State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 807 (Tex. 2007)).

The Estate contends that its fourth counterclaim under § 542.058 and § 542.060 should not have been dismissed because John Hancock failed to timely pay the Estate the annuity benefits in violation of Chapter 542. It claims that the interpleader was filed "well after . . . John Hancock knew of the Wheatley estate's claim," that before the interpleader was filed, John Hancock "knew or should have known that the beneficiary designation naming Ward was void," and that, despite knowing that the Estate laid claim to the benefits, John Hancock nonetheless disbursed the payments to Ward prior to filing this interpleader. (Doc. 147 at 2). John Hancock insists that it only became aware of the adverse claim to the annuity on July 11, 2018, when the Estate sent a letter stating that Ward was divorced from the decedent. (*See* Doc. 152-2 at 2). John Hancock posits that it filed the interpleader within the 90-day window since it did not receive notice of the adverse claim until July 11, 2018 and filed this interpleader action on August 20, 2018.

However, the Estate had previously sent letters on March 20, 2018 and April 9, 2018, that similarly put John Hancock on notice that "Jennifer was not married, nor had any children. No others had standing therefore her Estate would be the beneficiary of her Annuity." (Doc. 1-5 at 5, 7). On April 16, 2018, the Estate also sent a letter explicitly laying out its legal basis for why it was the proper beneficiary. (Doc. 1-5 at 13-14). The Estate stated that it had spoken with the

4

Department of Justice ("DOJ"), the owner of the Annuity, who stated that it did not authorize a change of beneficiary and the Estate requested that John Hancock contact the DOJ. (*Id.*) John Hancock thereafter received a claim form from Ward on May 7, 2018, "providing the necessary information to process his request for payment of the Annuity proceeds as the designated beneficiary." (Doc. 152 at 3).

John Hancock provides no explanation as to why it contends that the Estate's letter on July 11, 2018, was the first time it received notice of an adverse claim. The Estate had previously filed multiple letters—before Ward's claim—claiming entitlement to the annuity and stating that Jennifer Wheatley was not married at death. This put John Hancock on notice of the Estate's claim and Jennifer Wheatley's divorced status *before* Ward's claim. Therefore, the 90-day window began at least as early as May 7, 2018, when John Hancock was both on notice of the adverse claims to the annuity and received all of the information it needed to process Ward's claim. *See* Tex. Ins. Code § 542.058(c). John Hancock did not file the interpleader action until 105 days later, on August 20, 2018, and therefore failed to meet the 90-day deadline.

But contrary to the Estate's recent position, (Doc. 163 at 3), the record does not support a finding that John Hancock violated § 542.058(a) by delaying payment past 60 days, as opposed to a violation under subsection (c) of that provision. In order for the 60-day window to begin, the insurer must receive "all items, statements, and forms reasonably requested and required under Section 542.055." Tex. Ins. Code § 542.058(a); *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 812 (Tex. 2019), *reh'g denied* (Dec. 13, 2019) ("Additional TPPCA deadlines are triggered when "the insurer receives all items, statements, and forms required [. . .] to secure

5

final proof of loss."). Moreover, the deadline is only triggered if the claim is *accepted*. *See* Tex. Ins. Code §§ 542.057(a); 542.056. The Estate does not point to any evidence in the record showing whether John Hancock requested or received any such items, statements, or forms from the Estate. In addition, the record indicates that John Hancock rejected the Estate's claim on March 8, 2018—albeit incorrectly. Because the 60-day window for payment is not triggered until all information is *received* by the insurer and the claim is *accepted*, the record does not demonstrate that the 60-day window under § 542.058(a) was triggered by John Hancock's claim to the annuity.

Nonetheless, the record does demonstrate that John Hancock failed to file an interpleader action within 90 days of being put on notice of the adverse claims to the annuity—as is required under § 542.058(c). It also never deposited the $16,069.94 into the court's registry, and thus the statutory interest has not tolled. *See Prudential Ins. Co.*, 443 S.W.3d at 512. As a result, John Hancock is liable under § 542.060 to the Estate for 18% annual interest accrued beginning on August 6, 2018 (the day after the 90-day deadline), reasonable attorneys' fees in litigating its fourth counterclaim, and the improperly paid funds of $16,069.94 that the Court has already ordered on May 28, 2020.

## II. ATTORNEYS' FEES OF DEFENDANT ESTATE

### A. Legal Standard

In the Fifth Circuit, courts apply a two-step method for determining a reasonable attorneys' fee award. *Combs v. City of Huntington*, 829 F.3d 388, 391–92 (5th Cir. 2016). Courts first calculate the lodestar, "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Id.* (quoting *Jimenez v. Wood Cty.*,

6

621 F.3d 372, 379 (5th Cir. 2010)). In so doing, the court "should exclude all time that is excessive, duplicative, or inadequately documented." *Id.* The court may then enhance or decrease the lodestar based on the twelve *Johnson* factors. *Id.*; *see Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).[1]

### B. Analysis

#### i. Merits of Attorneys' Fees Sought

The Wheatley Estate seeks $106,427.50 in attorneys' fees against John Hancock. (Doc. 146). The Estate cites three bases for attorneys' fees: (1) the Court's equitable power to award attorneys' fees in an interpleader action; (2) delays in payment pursuant to Texas Insurance Code § 542.060, which, as discussed *supra*, was the Estate's fourth counterclaim; and (3) Section 38.001 of the Texas Civil Practice and Remedial Code. (*Id.*).

First, the Estate contends that the Court may use its equitable power to award its attorneys' fees, relying solely on *State Farm Life Ins. Co. v. [Bryant]*, 2019 WL 7938266, at *10 (N.D. Tex. May 16, 2019). This argument is misplaced. While it is true that, "a district court has the authority

---

[1] The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 714 F.2d at 717–19.

7

to award costs, including reasonable attorney's fees, in interpleader action," such fees are awarded only to the interpleader-plaintiff when that interpleader-plaintiff is a "disinterested stakeholder." *Id. See, e.g.*, *Rhoades v. Casey*, 196 F.3d 592, 603 (5th Cir. 1999) ("The award of attorney's fees . . . are available when the *interpleader is a disinterested stakeholder*.") (emphasis added). In *Bryant*, the attorneys' fees were awarded to the disinterested insurance company who filed the interpleader rather than, as the Estate would have it, the claimant. The Court has not come across a case—and the Estate cites to none—in which a claimant in an interpleader, even if successful, is awarded attorneys' fees. The Estate may not recover attorneys' fees on this basis.

Second, the Estate contends that it may be awarded attorneys' fees based on its fourth counterclaim under Tex. Ins. Code § 542.060. That provision provides that if an insurer does not promptly pay an insurance claim, it is liable for "reasonable and necessary attorney's fees." Tex. Ins. Cod. § 542.060. As discussed above, the Court finds and holds that John Hancock violated § 542.058(c) of the Texas Insurance Code, thereby entitling Estate Defendants to attorneys' fees. However, the Estate is entitled to attorneys' fees and costs associated only with its filing and litigating the fourth counterclaim, not the entire interpleader action.

Finally, the Estate contends that it is entitled to attorneys' fees under Section 38.001 of the Texas Civil Practice and Remedial Code. That provision allows an individual to "recover reasonable attorney's fees upon prevailing on a breach of contract claim." *Earth Power A/C & Heat, Inc. v. Page*, 2020 WL 3422216, at *6 (Tex. Ct. App. June 23, 2020). Here, the Estate is the prevailing party on its breach of contract claim. The Court ordered that the Estate recover the $16,069.04 plus interest that John Hancock improperly paid to Ward. The Estate may thus recover

reasonable attorneys' fees associated with filing and litigating the breach of contract claim. Namely, its work (1) preparing its original answer and counterclaims to the interpleader action, (2) defending against John Hancock's motion to dismiss its breach of contract counterclaim, (3) preparing and litigating motions to reconsider and reinstate its counterclaims, and (4) preparing and litigating its motion for summary judgment as to its breach of contract counterclaim.

Thus, the Estate is entitled to attorneys' fees limited to the filing and litigating of (1) the fourth counterclaim based on § 542.060 and (2) the breach of contract counterclaim.

At the hearing on July 16, 2020, the Court asked the Wheatley Estate to reconcile several discrepancies in its fees requested. Namely, the Estate represented that their attorneys charged at rates of $350 and $250, and the paralegals charged at $175 per hour; however, their summary included charges for $375 per hour and $125 per hour. The Wheatley Estate subsequently filed an affidavit from the bookkeeper for Gabriel Berry & Weston. (Doc. 153). The affidavit adjusts the total requested amount to $106, 427.50, and explains that the correct attorney and paralegal charges are as follows: $375 (attorney Richard Gabriel), $350 (attorney Douglas Berry), $125 (paralegals Brenda Lowman and Allison Finarelli), and $175 (paralegal Connie Sams). (*Id.*).

The Estate's requested amount is based off a lodestar calculation for three attorneys and three paralegals, as described above. While these hourly rates are reasonable in Texas, the Estate's requested amount is not reasonable because it includes fees and costs unassociated with its breach of contract claim and its fourth counterclaim. For instance:

- The Estate requests fees for over 15 hours drafting and preparing its motion for leave to amend to add a fifth counterclaim under Massachusetts law. This claim is unrelated to both

9

the breach of contract claim and the fourth counterclaim. Further, this motion was denied by the Court as untimely. (Doc. 145-2 27–28); (Doc. 106, filed 1/10/2020); (Doc. 137).
- Similarly, the Estate requests fees for its work associated with its motion for choice of law, which was unrelated to the aforementioned counterclaims, and which the Court denied as moot. (Doc. 137).
- The Estate requests fees for its work associated with the appeal that was filed by Ward on January 10, 2020. That appeal is unrelated to the Estate's aforementioned counterclaims.

In sum, the Court grants the Estate's attorneys' fees related to the filing and litigating of the fourth counterclaim based on § 542.060 and the breach of contract counterclaim. However, the Court orders the Estate to provide an updated request for attorneys' fees in accordance with that abridged scope and to exclude any fees unrelated to the two counterclaims described above.

*ii. Whether § 542.060 precludes attorneys' fees under § 38.001*

The Court is also tasked with determining whether entitlement to attorneys' fees under § 542.060 precludes attorneys' fees under § 38.001. For the reasons discussed below, the Court finds that it does not.

Section 38.001 of the Texas Civil Practice and Remedial Code provides attorneys' fees for a successful breach of contract claim. Tex. Civ. Prac. & Rem. Code § 38.001. Section 38.006, in turn, provides various exceptions where § 38.001 would not apply—including "Subchapter B, Chapter 542, Insurance Code." *Id.* at § 38.006. These exceptions have caused confusion as to whether they completely preclude attorneys' fees, or only preclude attorneys' fees under § 38.001 itself, which led the Fifth Circuit to certify that question to the Texas Supreme Court. *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 730, 732 (5th Cir. 1999). The Texas Supreme Court responded by holding that, "the insurer is liable for reasonable attorney's fees incurred in pursuing the breach-of-contract action under section 38.001 unless the insurer is liable for

10

attorney's fees under another statutory scheme." *Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000).

John Hancock does not deny violating Chapter 542, but rather argues that the Estate can recover either under § 38.001 or under § 542.060—not both—"since the subject of the breach of contract counterclaim and the claim under Chapter 542 of the Insurance Code (the recovery of the $16,069.94) are the same." (Doc. 162 at 2). This characterization is incorrect. The Estate's breach of contract claim was its second counterclaim, while the insurance penalty provision was a distinct, fourth counterclaim. The Estate's success on the breach of contract counterclaim does not entitle the Estate to attorneys' fees under § 542.060—otherwise the Motion to Reconsider would not have been an issue at all. Similarly, § 542.060 does not entitle the Estate to attorneys' fees for the breach of contract counterclaim. Rather, it would only entitle the Estate to attorneys' fees for the fourth counterclaim based on that insurance penalty provision. This is not a case where § 38.001 does not apply because the "the insurer is liable for attorney's fees under another statutory scheme." *Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000). Therefore, although the Estate is entitled to attorneys' fees for its fourth counterclaim under § 542.060, the Estate may also recover under § 38.001 for the breach of contract counterclaim.

### III.   <u>ATTORNEYS' FEES OF PLAINTIFF JOHN HANCOCK</u>

John Hancock requests $63,387.55 in attorneys' fees and costs. John Hancock originally sought attorneys' fees in the amount of $42,993.00 and costs in the amount of $894.55 for a total of $43,887.55. (Doc. 77). On May 28, 2020, the Court set a hearing for July 9, 2020 to address all parties' requests for attorneys' fees and ordered that all briefing be submitted no later than June

11

22, 2020. Despite being on notice of that hearing on attorneys' fees for over a month, John Hancock did not file any update to its Motion for Attorneys' Fees. Indeed, in its response to the Estate's motion for fees on July 6, 2020, John Hancock explicitly directed the Court to its original Motion for Attorneys' Fees filed in September 2019 for consideration. (Doc. 149 at 3).

It was not until July 14, 2020, that John Hancock filed a supplement to its original Motion for Attorneys' Fees seeking a significant increase in requested fees. (Doc. 154-1). It requested an additional $63,206.95 in attorneys' fees for "dealing with the resolution of [the Wheatley Estate's] baseless counterclaims and a premature appeal by Defendant [Ward], which unnecessarily protracted the resolution of this interpleader action." (*Id.* at 2). At a hearing on July 16, 2020 the Court tentatively denied that motion as untimely, given the ample opportunity John Hancock had to request such a significant increase before July 14, 2020, and the fact that it had left no time for the Estate to respond before the scheduled hearing that had already been re-scheduled from the prior week.

In its most recent briefing, John Hancock renews and narrows its request for increased attorneys' fees related to the time expended in defending "baseless, untimely and/or unsuccessful motions and discovery filed by the Wheatley Estate." (Doc. 162 at 4). This request includes the following efforts: (1) opposition to the Estate's motion for leave to amend its answer, crossclaim, and counterclaims; (2) motion for protective order to quash improper written discovery and corporate deposition requested by the Estate; (3) opposition to the Estate's motion for determination of choice of law on counterclaims; and (4) opposition to the Estate's motion to

12

modify scheduling order. (*Id.*) These efforts allegedly led to an additional $19,500 in fees. (*Id.* at 5 n.4).

### A. Legal Standard

Neither the interpleader statute or Federal Rule of Civil Procedure 22 expressly provides for attorneys' fees and costs. 7 Charles Alan Wright et al., *Federal Practice & Procedure* § 1719 (3d ed. 2001). Nonetheless, in the Fifth Circuit "[i]t is well settled that a district court has the authority to award costs, including reasonable attorney's fees, in interpleader actions." *Royal Indem. Co. v. Bates*, 307 F. App'x 801, 806 (5th Cir. 2009) (quoting *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 696 F.2d 359, 364 (5th Cir. 1983). Awarding fees and costs is a matter of judicial discretion. *Id.* (citing *Phillips Petroleum Co. v. Hazlewood*, 534 F.2d 61, 63 (5th Cir. 1976)). Courts consider the following factors in determining whether to award costs to an interpleader-plaintiff: "(1) whether the case is simple; (2) whether the interpleader-plaintiff performed any unique services for the claimants or the court; (3) whether the interpleader-plaintiff acted in good faith and with diligence; (4) whether the services rendered benefited the interpleader-plaintiff; and (5) whether the claimants improperly protracted the proceedings." *Id.*; *see also* 7 Charles Alan Wright et al., *Federal Practice & Procedure* § 1719 (3d ed. 2001).

### B. Analysis

The Court recognizes the fairness and equity considerations in favor of awarding attorneys' fees for interpleader-plaintiffs: there is no equity in compelling a neutral stakeholder who happens to control disputed funds to assume the costs of determining who among the claimants is the rightful owner. 7 Charles Alan Wright et al., *Federal Practice & Procedure* § 1719 (3d ed. 2001).

Forcing neutral stakeholders to incur such costs would deter, rather than encourage, resolution by interpleader. The Court also finds that the four motions filed by the Estate and described *supra*, "improperly protracted the proceedings." *Royal Indem. Co.*, 307 F. App'x at 806. These factors weigh in favor of granting John Hancock the requested attorneys' fees.

However, the third *Royal* factor, diligence, weighs against awarding John Hancock its full attorneys' fees. This is not a typical interpleader case in which, faced with two competing claims, the insurance company brought an interpleader action to determine who it should pay. Instead, here, John Hancock knew of the Estate's claim months before it received Ward's competing claim, yet it nonetheless immediately paid Ward $16,609 in benefits and then brought this interpleader three months later, when the Estate continued to lay claim as the entitled beneficiary.

The Fifth Circuit has held that an interpleader-plaintiff is not entitled to attorney's fees where it was "in part responsible for causing the litigation" and their conduct during litigation protracted proceedings. In *Royal Indemnity Co. v. Bates*, the interpleader-plaintiff faced a similar situation to John Hancock's here: although the annuitant was not authorized to name a beneficiary, he filed a form designating a beneficiary, which caused competing claimants to the benefits after he died. 307 F. App'x 801, 806 (5th Cir. 2009). The Fifth Circuit found that the interpleader-plaintiff was "responsible for much of the uncertainty surrounding" the proper beneficiary because it failed to communicate with the annuitant as to the validity of the designation after he sought to name a beneficiary in 1995, and "[t]heir prompt action, one way or the other, may well have prevented this litigation." *Id.* The Fifth Circuit held that given this lack of diligence, along with

14

the interpleader-plaintiff's nonresponsive conduct during the interpleader litigation, the district court abused its discretion in awarding costs and attorneys' fees. *Id.*

While the facts of *Royal* differ in some respects from the instant case, the Fifth Circuit's instructive principle that attorneys' fees are not merited where the interpleader-plaintiff is "in part responsible for causing the litigation" applies here. *Id.* Namely, John Hancock's decision to pay Ward prior to bringing this interpleader despite knowing about the Estate's existing and competing claim gave rise to the Estate's meritorious breach of contract claim. John Hancock's conduct also prolonged proceedings: the Court resolved the underlying interpleader action in November 2019, yet the dispute over the $16,609 that John Hancock improperly paid to Ward has persisted. However, the Court is also sensitive to John Hancock's efforts to encourage settlement with the Defendants.

It is not clear whether the equities in this case merit exercise of the Court's discretion to award John Hancock's requested attorneys' fees and costs. Under these circumstances, the Court finds that the equitable solution is to award John Hancock's requested attorneys' fees in part, for (1) the hours spent preparing and filing the interpleader action and (2) the hours spent defending the Estate's motions that improperly protracted proceedings. The initial requested amount of $43,887.55 was based on 34.7 hours spent preparing and filing the interpleader action, and additional hours responding to the Wheatley Estate and Ward's counterclaims and motions, attending court conferences, and preparing and responding to written discovery. (Doc. 77 at 3, 8). The Court will accordingly award fees for the 34.7 hours that John Hancock spent preparing and filing the interpleader action, as well as the $19,500 requested for defending the motions filed by

the Estate. This resolution balances the interests of encouraging interpleader actions where appropriate while also discouraging non-diligence in filing such actions.

The Court further finds that the hourly rates for the lodestar calculation are reasonable in light of the prevailing hourly rate in the community for similar work. The hourly rates for each of the eight attorneys, which are experienced in the field and have a longstanding relationship with John Hancock, are $435, $280, $255, $540, $580, $220, and $205. (Doc. 77 at 7). The lodestar does not merit an enhancement under the *Johnson* factors. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

The Court therefore holds that John Hancock is entitled to attorneys' fees for (1) the 34.7 hours spent preparing and filing the interpleader action and (2) the time expended in defending various motions by the Estate. The Court orders John Hancock to provide an updated request for attorneys' fees in accordance with that abridged amount.

## IV. DEFENDANT WARD'S MOTION FOR LEAVE

On October 17, 2019, Defendant Ward filed a Motion for Leave to File Opposition to John Hancock's Motion for Attorneys' Fees (Doc. 94). Defendant Ward primarily opposes the attorneys' fees sought for the protraction of proceedings caused by discovery. (Doc. 94-1 at 1-2). As discussed *supra*, the Court has granted attorneys' fees to Plaintiff for the filing and litigating of the interpleader action. The only fees granted as to the protraction of proceedings are regarding the Estate's conduct—not conduct by Defendant Ward. Because this Court has denied Plaintiff's fees related to Defendant Ward's discovery requests or alleged protraction of proceedings, these arguments are denied as moot.

Defendant Ward also relied on the fact that there had not been a final judgment as to who was the proper beneficiary of the annuity. This Court has since made a final judgment that the Estate is the proper beneficiary of the annuity. (Doc. 102). Thus, that argument is also denied as moot.

As to Defendant Ward's opposition to attorneys' fees for the filing and litigating of the interpleader action, he does not present any argument that has not been addressed *supra*, in the discussion of attorneys' fees for Plaintiff. Finally, any arguments regarding Plaintiff seeking repayment are irrelevant to the matter of attorneys' fees. Accordingly, this Court finds and holds that Defendant Ward's Motion is denied as moot.

## V. CONCLUSION

The Court **GRANTS** the Estate's Motion to Reconsider. The Court also finds that the Estate is entitled to attorneys' fees limited to the filing and litigation of the Texas Insurance Code counterclaim and breach of contract counterclaim. The Court, therefore, **GRANTS IN PART AND DENIES IN PART** the Estate's Motion for Attorneys' Fees. The Court further determines that Plaintiff John Hancock is entitled to attorneys' fees limited to the interpleader action and the $19,500 in defending motions by the Estate, hereby **GRANTING IN PART AND DENYING IN PART** Plaintiff's Motion for Attorneys' Fees. Both parties are ordered to provide an updated request for attorneys' fees and costs in accordance with the limitations described above.

Lastly, the Court also holds that Defendant Ward's Motion for Leave to File Opposition to John Hancock's Motion for Attorneys' Fees is **DENIED** as moot.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 22nd day of September, 2020.

*[signature]*

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE